IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

WILLIAM A. LESTER, #R15791,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀Plaintiff,⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
vs.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀Case No. 26-cv-00127-JPG
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
CLEVELAND RAYFORD,⠀⠀⠀⠀⠀⠀⠀)
MARY DAMBACHER, and⠀⠀⠀⠀⠀⠀)
WELL PATH HEALTHCARE,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀Defendants.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)

## MEMORANDUM & ORDER

**GILBERT, District Judge:**

This matter is before the Court for preliminary review of Plaintiff William Lester's First Amended Complaint filed February 24, 2026. (Doc. 9). Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983 for constitutional deprivations stemming from the denial of medical care for his serious shoulder injury at Madison County Jail. He seeks monetary relief. *Id.*

The First Amended Complaint is now subject to review under 28 U.S.C. § 1915A, which requires the Court to screen prisoner complaints and filter out non-meritorious claims. 28 U.S.C. § 1915A(a). Any portion that is legally frivolous or malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations are liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## First Amended Complaint

Plaintiff sets forth the following allegations in the Amended Complaint (Doc. 9, pp. 5-9): Plaintiff sustained a serious shoulder injury during his arrest on or around September 25, 2024. *Id.* at 5. When he arrived at Madison County Jail, Dr. Cleveland Rayford and Nurse Mary

1

Dambacher refused to treat his injuries. They did not order x-rays or send him to the emergency room for evaluation or treatment. They also denied him pain medication. *Id*.

On or around October 12, 2024, Nurse Dambacher finally prescribed him Tylenol. He was also sent for x-rays, which showed that his clavicle bone pierced his skin above his shoulder. Plaintiff was sent to an orthopedic surgeon, who recommended a "total rebuild" of his shoulder. The surgeon prescribed stronger pain medication and ordered him to apply ice to his injury to reduce the swelling until surgery. *Id*.

Back at the Jail, the "head of the health care group" refused to follow the surgeon's orders. Plaintiff was not moved to a medical unit, given ice, or given prescription pain medication. Dr. Rayford and Nurse Dambacher only offered him Tylenol. Because he could not move, Plaintiff stayed in bed and developed bed sores. *Id*.

Four months after his original injury, Plaintiff finally underwent surgery. The surgeon spent twelve hours rebuilding his shoulder with an artificial tendon and dog bone. *Id*. at 6. The surgeon then provided post-operative orders for prescription pain medication, ice, and physical therapy. *Id*.

Dr. Rayford disregarded the orders. On January 17, 2025, the doctor prescribed tramadol for pain instead, but this medication did nothing to help manage the type of post-operative pain that Plaintiff faced. Plaintiff claims the doctor could have prescribed him appropriate pain medication much earlier, but he simply refused to do so. Moreover, after three post-operative visits with the surgeon, Plaintiff's shoulder "fell apart," and his requests for additional appointments were denied. *Id*.

2

Plaintiff submitted grievances about the matter.  Dr. Rayford then took away his Tylenol on April 12, 2025.  By mid-April 2025, all members of the medical staff were replaced, after an inmate died.  *Id*.

The same month, Well Path Healthcare became the private medical provider for the Jail. Like previous medical providers, Well Path's new doctor ignored Plaintiff's requests for further medical treatment and pain relief.  When Plaintiff met with "their doctor" two months in a row, he was informed that "it might take a while to get a[nother] doctor[']s appointment."  *Id*. at 7.  In the meantime, an outside medical technician visited the Jail and took new x-rays, which revealed that Plaintiff's clavicle bone was positioned three inches above his shoulder with hardware protruding from it.  *Id*. at 9.  Plaintiff's shoulder began dislocating with certain movements.  He noticed "constant . . . [r]ubbing, popping, [and] cracking sensations."  *Id*.  For the next three months, Plaintiff sat and waited to see his surgeon, and he was ultimately placed on a waiting list for shoulder repair surgery.  *Id*.

## Discussion

Based on the allegations, the Court designates two counts in the *pro se* Amended Complaint (Doc. 9):

**Count 1:**    Eighth or Fourteenth Amendment claim against Defendants for denying Plaintiff timely and adequate medical attention for a broken clavicle and related pain at Madison County Jail beginning September 2024.

**Count 2:**    Negligence claim against Defendants for denying Plaintiff timely and adequate medical attention for a broken clavicle and related pain at Madison County Jail beginning September 2024.

**Any claim in the Amended Complaint that is not addressed herein is considered dismissed without prejudice under *Twombly*.**[1]

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

**Count 1**

The Eighth Amendment governs this claim, if Plaintiff was a convicted prisoner when he was denied medical care for his shoulder injury. *Estelle v. Gamble*, 429 U.S. 97 (1976). Under the Eighth Amendment, Plaintiff must set forth allegations describing an objectively serious medical need and deliberate indifference to his medical need by each defendant. *Id*. at 104-05. Plaintiff's broken clavicle and associated pain are considered objectively serious at this stage. *See, e.g., Higgins v. Corr. Med. Servs. of Ill., Inc.*, 178 F.3d 508, 511 (7th Cir. 1999) (dislocated shoulder can constitute a serious medical need); *Ruiz Velez v. Liu*, 2026 WL 632400, at *3 (W.D. Wis. Mar. 6, 2026) (fractured clavicle and associated pain considered objectively serious); *Silver v. Meisner*, 2025 WL 3141107, at *2 (E.D. Wis. Nov. 10, 2025) (same); *Duffin v. Dart*, 2018 WL 461229, at *3 (N.D. Ill. Jan. 18, 2018) (same); *Miller v. Shah*, 2012 WL 2922715, at *3 (S.D. Ill. July 17, 2012) (same); *Diaz v. Hart*, 2010 WL 849654, at *5 (N.D. Ill. Mar. 8, 2010) (same). Dr. Rayford and Nurse Dambacher's alleged delay or denial of Plaintiff's treatment supports a claim of deliberate indifference against both individuals. *See, e.g., Arnett v. Webster*, 658 F.3d 742 (7th Cir. 2011) (delay in treating non-life-threatening but painful condition may constitute deliberate indifference under the Eighth Amendment); *Perez v. Fenoglio*, 792 F.3d 768 (7th Cir. 2015) (delay in treating inmate may show deliberate indifference where it exacerbates injury or unnecessarily prolongs pain). Count 1 survives screening as an Eighth Amendment claim against Dr. Rayford and Nurse Dambacher.

The Fourteenth Amendment due process standard instead controls, if Plaintiff was a pretrial detainee when this claim arose. *Miranda v. County of Lake*, 900 F.3d 335, 352-54 (7th Cir. 2018). Under the Fourteenth Amendment, Plaintiff must set forth allegations showing that each defendant acted purposefully, knowingly, or perhaps even recklessly when considering the consequences of

the plaintiff's case. *Id*. at 353. Negligence or even gross negligence does not satisfy this standard. *Id*. In addition, Plaintiff must set forth allegations showing that the challenged conduct was objectively unreasonable. *Id*. at 354. When making this determination, the Court considers "the totality of facts and circumstances." *Mays v. Dart*, 974 F.3d 810, 819 (7th Cir. 2020). According to the allegations, Dr. Rayford and Nurse Dambacher acted purposefully, knowingly, or perhaps even recklessly when they refused to evaluate or treat Plaintiff's shoulder injury and related pain from September 25, 2024 through April 2025, and each defendant's conduct was objectively unreasonable. Count 1 survives screening as a Fourteenth Amendment claim against both individual defendants.

The allegations fail to articulate a claim against Well Path Healthcare under the Eighth and Fourteenth Amendments. Plaintiff faults the private corporation's employee(s) (*i.e.*, unidentified doctor(s)) for delaying his referral to a surgeon from April through July 2025. The doctrine of *respondeat superior* does not extend to private corporations under § 1983, however, so Well Path cannot be held liable for the misconduct of its employee(s). *Shields v. Illinois Dept. of Corr.*, 746 F.3d 782,789 (7th Cir. 2014) (citing *Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982)). Plaintiff must instead identify a policy, custom, or practice attributable to the corporation that caused a violation of his constitutional rights. *Shields*, 746 F.3d at 786 (citing *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978)). He points to no policy, custom, or practice that caused the delay or denial of medical care for his shoulder injury and/or pain. Therefore, Count 1 shall be dismissed without prejudice for failure to state a claim against Well Path Healthcare.

5

**Count 2**

To proceed with his state law medical negligence claim against the defendants,[2] Plaintiff must show: (1) the applicable standard of care; (2) each defendant breached the standard of care and was negligent; and (3) the breach was a proximate cause of the plaintiff's injury. *Chambers v. Igram*, 858 F.l2d 351, 355 (7th Cir. 1988). The allegations are sufficient to support a medical negligence claim against Dr. Rayford and Nurse Dambacher. For now, Count 2 shall proceed against both defendants. However, Plaintiff must eventually file an affidavit stating that "there is a reasonable and meritorious cause" for litigation of the medical malpractice claim, along with a physician's report in support of the affidavit. *See Young v. United States*, 942 F.3d 349 (7th Cir. 2019) (citing 735 ILCS § 5/2-622). Although he did not produce this documentation with the original or amended complaint, Plaintiff's failure to do so is not dispositive of his claim at this point. *Id*.

This claim does not survive screening against Well Path Healthcare. Plaintiff does not allege that this private corporation employed Dr. Rayford or Nurse Dambacher. Well Path took over inmate medical care after both individuals were terminated from employment in April 2025. Plaintiff's allegations of wrongdoing against this defendant and its unidentified employees beginning in late April 2025 are too vague and ambiguous to support a state law medical negligence claim against Well Path under the pleading standards set forth in Rule 8 of the Federal Rules of Civil Procedure and *Twombly*. Count 2 shall therefore be dismissed without prejudice for failure to state a claim against Well Path Healthcare.

---

[2] The district court may exercise supplemental jurisdiction over the Illinois negligence claim because it is "so related to [the federal law claims] that [it] form[s] part of the same case or controversy under Article III of the United States Constitution." *See* 28 U.S.C. § 1367(a).

6

**Disposition**

**IT IS ORDERED** that the Amended Complaint (Doc. 9) survives screening under 28 U.S.C. § 1915A.  **COUNTS 1** and **2** will proceed against **DR. CLEVELAND RAYFORD** and **NURSE MARY DAMBACHER**, and **BOTH CLAIMS** are **DISMISSED** without prejudice for failure to state a claim against **WELL PATH HEALTHCARE**.

**The Clerk's Office is DIRECTED to TERMINATE WELL PATH HEALTHCARE as a defendant in CM/ECF and ENTER the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.**

**IT IS ORDERED** that as to **COUNTS 1** and **2**, the Clerk of Court shall prepare for Defendants **DR. CLEVELAND RAYFORD** and **NURSE MARY DAMBACHER**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint (Doc. 9), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If any Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with that Defendant's current work address, or, if not known, that Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or

disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Amended Complaint (Doc. 9) and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Local Rule 8.2, Defendants need only respond to the issues stated in this Merits Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED**.

**DATED: 4/21/2026**

_____
**J. PHIL GILBERT**
**United States District Judge**

8

## Notice

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your First Amended Complaint.  After service has been achieved, the defendants will enter an appearance and file Answers to your First Amended Complaint.  It will likely take at least 60 days from the date of this Order to receive Answers, but it is entirely possible that it will take 90 days or more.  The Court will then enter a Scheduling Order containing important information on deadlines, discovery, and procedures.  Plaintiff is advised to wait until counsel has appeared for both defendants before filing any motions, in order to give the defendants notice and an opportunity to respond to those motions.  Motions filed before defendants' attorneys have appeared will generally be denied as premature.  Plaintiff need not submit any evidence to the court at this time, unless otherwise directed by the Court.